*Formatted for Electronic Distribution*                                      *for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
11/20/2018

_____

In re:

    **Mark Kevin Fisher,**                              **Chapter 7**
        **Debtor.**                                    **Case # 18-10343**

_____

*Appearances: Erik Valdes, Esq.*                    *Elana Baron, Esq.*
        *Fitts, Olson & Giddings*                   *Bragdon & Kossayda, P.C.*
        *Brattleboro, Vermont*                       *Keene, New Hampshire*
        *For the Debtor*                            *For Brattleboro Savings & Loan*

### MEMORANDUM OF DECISION
#### SUSTAINING THE CREDITOR'S OBJECTION
#### AND DENYING DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(C)(3)

On August 21, 2018, the Debtor filed a petition to commence this chapter 7 case and, on August 23, 2018, he filed a motion to extend the automatic stay in this case, pursuant to 11 U.S.C. § 363(c)(3) (doc # 8, hereafter, "the Motion").[1] The Debtor filed the Motion because he filed this bankruptcy case within one year of having an earlier bankruptcy case dismissed, and therefore the stay might have otherwise terminated on the 30th day this case was pending, by operation of law. Creditor Brattleboro Savings and Loan Association ("BSL") filed an objection to the Motion, as well as an amended objection and a supplemental memorandum of law in opposition to the relief the Debtor seeks (doc. ## 15, 19, 20, collectively, "the BSL Opposition"). The Debtor filed a reply to the BSL Opposition (doc. # 18, the "Reply"). Beginning with the initial hearing scheduled for September 14, 2018, the Debtor either failed to appear, or failed to follow proper noticing requirements so the hearing could proceed, at three separate hearings the Court scheduled so the Debtor could introduce testimony in support of the Motion.

Based on the arguments presented at the September 14th hearing, the parties' papers relating to the Motion, the record in the Debtor's current and prior bankruptcy cases, and for the reasons set forth below, the Court denies the Debtor's Motion to extend the automatic stay in this repeat filer case.

---

[1] All document references pertain to documents filed in case # 18-10343, which is the Debtor's current bankruptcy case, unless otherwise indicated.

# I.  JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference the District Court entered June 22, 2012. The Court declares the Motion, seeking an extension of the automatic stay, is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G), and one over which this Court has constitutional authority to enter a final judgment.

## II.  LEGAL QUESTIONS PRESENTED

This Motion presents five legal issues under the repeat filer statute, 11 U.S.C. § 362(c):

(1) Does § 362(c)(3)(A) apply in this case and trigger a possible termination of the automatic stay, as to all creditors, on the 30th day after the case was filed?

(2) Did the Debtor timely move to extend the stay, and timely conclude the hearing on that motion, as required by § 362(c)(3)(B)?

(3) Does a presumption arise that the Debtor filed this case not in good faith, under § 362(c)(3)(C)?

(4) If so, has the Debtor rebutted the "not filed in good faith presumption," by clear and convincing evidence, in satisfaction of § 362(c)(3)(C)?

(5) If the Debtor has met that burden of proof and established he filed this case in good faith, what, if any, conditions on the extension of the stay are warranted, under § 362(c)(3)(B)?

## III. FACTUAL AND PROCEDURAL BACKGROUND

The relationship between the Debtor and BSL, the procedural chronology of this case, as well as the procedural history of the Debtor's most recently filed previous case (case # 16-11462), are critical for purposes of § 363(c)(3) and adjudication of the Debtor's Motion.

On October 9, 2015, BSL commenced a foreclosure against the Debtor's residential real property that secures the Debtor's debt to BSL, located at 800 Hubbard Hill Rd., Halifax, VT (the "Property"). On May 5, 2016, the Vermont state court entered a judgment of foreclosure in favor of BSL, and against the Debtor and his then spouse, for approximately $169,000 (the "Judgment"). The Judgment set a redemption period expiration date of November 7, 2016. See doc. # 19. On November 1, 2016, less than a week before the redemption period was to expire, the Debtor and his then spouse filed a chapter 13 case (# 16-11462, "the 2016 Case"). On April 26, 2017, on the oral motion of the Debtor's spouse, the cases were severed, and her case was converted to chapter 7. She obtained a chapter 7 discharge. The Debtor's case remained in chapter 13.

Despite several continuances and multiple amendments of schedules, the Debtor never filed all the required documents, or disclosed all of his debts and assets in his schedules, in the 2016 Case. On March 6, 2017, the chapter 13 trustee filed a motion to convert the Debtor's chapter 13 case to a case

2

under chapter 7 (case # 16-11462, doc. # 40). In support of that motion, the chapter 13 trustee alleged (1) the Debtor had failed to disclose an inheritance from his aunt, his role as executor of her estate, and certain stock transactions, on his Statement of Financial Affairs; (2) the Debtor had failed to account for a substantial sum of money (approximately $80,000) he received from his aunt's estate; (3) the Debtor had failed to list Douglas Wolinsky, Esq. (in his capacity as chapter 7 case trustee) as a creditor in the case, even though Attorney Wolinsky had obtained a judgment against the Debtor in a related corporate chapter 7 case (Turner & Cook, ch. 7 # 10-11344);[2] and (4) there could be "significant issues of the dischargeability of claims against [the Debtor]" which would be more properly and effectively addressed by a chapter 7 trustee. See doc. # 40 in case # 16-11462.

After the Debtor's attorney filed a notice of withdrawal (case # 16-11462, doc. # 42) and the Debtor filed additional amendments to his schedules (case # 16-11462, doc. # 46), the Debtor filed an objection (case # 16-11462, doc. # 56) to the chapter 13 trustee's motion to convert, in which the Debtor disputed the trustee's factual allegations. The Debtor insisted all of the issues the trustee had raised were due entirely to the withdrawal of the Debtor's attorney, but did not present any proof to support his view of the facts. The trustee filed a reply (case # 16-11462, doc. # 63) pointing to specific attorney representations and docket entries in the record that supported the factual allegations in his motion to convert. On May 19, 2017, the Court held a continued hearing on the trustee's motion to convert the 2016 Case and, after hearing from both parties, as well as an attorney representing twelve other heirs of the Debtor's aunt's estate, the Court granted the trustee's motion. The Court entered a conversion order on May 31, 2017 (case # 16-11462, doc. # 69). That concluded the chapter 13 phase of the 2016 Case.

In the subsequent, chapter 7, phase of the 2016 Case, the Debtor again sought and obtained several extensions of time to file amended schedules. Consequently, the Court granted several motions the chapter 7 trustee filed for an extension of the deadline to file an objection to the Debtor's discharge, based on the lack of complete schedules (case # 16-11462, doc. ## 92, 95, 105). Despite the numerous extensions the Court granted to the Debtor, he never filed a Statement of Intention following conversion of the case, nor did he amend the schedules to reflect the claims of the other heirs to his aunt's estate.

On January 26, 2018, the chapter 7 trustee filed a motion to dismiss the 2016 Case based on the

---

[2] While the Debtor did list the former trustee's law firm in his initial schedules in the 2016 Case (# 16-11462, doc. # 1), he did not list Attorney Wolinsky by name, he provided an incorrect address for Mr. Wolinsky's law firm, he did not quantify the claim, and he did not categorize the claim as secured; rather, he listed it in Schedule E/F as an unsecured claim. The Debtor later amended his schedules to quantify the claim and include the former trustee's name and correct address, but continued to list the claim as an unsecured claim, on Schedule E/F (doc. # 27).

Debtor's failure to appear for examination at meetings of creditors in the chapter 7 phase of the case (case # 16-11462, doc. # 102). The Debtor consented to that motion and, on April 3, 2018, the Court entered an order dismissing the 2016 Case, specifically based on the Debtor's failure to appear at meetings of creditors (case # 16-11462, doc. # 107). The Debtor did not receive a discharge in the 2016 Case. On May 22, 2018, the chapter 7 trustee filed a report of no distribution (via docket entry) in the 2016 Case, and the Clerk closed that case shortly thereafter.

On August 21, 2018, less than five months after the Court dismissed the Debtor's 2016 Case, and one day before the scheduled sale of the Debtor's Property in the BSL foreclosure action, the Debtor filed the instant chapter 7 case. See doc. # 19. In the Debtor's Statement of Intention in the instant case, he indicated his intention with respect to the Property was "to Surrender the Property" (doc. # 17). As in the 2016 Case, the Court also granted the chapter 7 trustee an extension of the deadline to file an objection to the Debtor's discharge (doc. # 50).

In the Debtor's Motion asking the Court to extend the automatic stay in this case, the Debtor asserts (a) his failure to meet his obligations in the 2016 Case was due, in large part, to significant medical circumstances, and (b) he is now in better health (doc. # 8, p. 2). The Debtor explains, "multiple severe concussions [ ] prevented him from preparing for, attending or competently participating in any 341 meeting" (doc. ## 8, 33). He emphasizes he is now well enough to perform all duties he has in this case, under the Bankruptcy Code. The gravamen of the Debtor's argument for an extension of the stay is that it is in the best interest of all creditors that he be allowed to sell the Property, at arm's length, rather than allow BSL to sell it through a foreclosure proceeding (doc. # 8, p. 3).

The Debtor set the original hearing on his Motion to Extend Stay for September 14, 2018, however, he did not file any writing or notify any party he intended to introduce testimony at that hearing, as required by this Court's Local Rules. See Vt. LBR 4001-3(a), 9014-1(b) and LBF Form V. When the Debtor sought to introduce testimony in support of his Motion, the Court pointed out the Debtor had not scheduled this matter for an evidentiary hearing, and it did not have sufficient time available that day to entertain the presentation of testimonial evidence. Moreover, BSL's attorney indicated she did not have authority to waive that requirement and objected to the introduction of evidence at that time.[3] Therefore, the Court denied the Debtor's request to testify on that date and, in the

---

[3] The Court waived that Local Rule notice requirement in the Goodrich case (ch. 13 # 17-10500), on August 17, 2018, under equitable principles, because that was the first hearing set after the Court changed its interpretation of § 362(c)(3). At the September 14th hearing in the instant case, however, the Court did not find such a waiver was warranted and therefore

absence of any evidence in support of the Motion, the Court also denied the Motion.

Subsequent to announcing those two bench rulings, the Court sua sponte reconsidered its determinations and, on September 27, 2018, it entered an order, sua sponte, reconsidering the Debtor's request, and granting the Debtor an opportunity to present testimony regarding his motivations for filing the instant bankruptcy case, as well as his compliance with the Bankruptcy Code requirements, and conduct generally, in his prior bankruptcy case (doc. # 26). Pursuant to the September 27th order, on October 4, 2018, the Debtor filed a notice of evidentiary hearing (doc. # 28). BSL filed its own notice of evidentiary hearing the following day (doc. # 30). Based on those two notices, the Court set aside two hours for testimony at a hearing to be held on October 19, 2018 at 10:15 a.m.

The Debtor's attorney, BSL's attorney, and BSL's witness all appeared for the evidentiary hearing, prior to the 10:15 start time on October 19th; they and the Court were prepared to commence the hearing at the scheduled time. The Debtor failed to appear by 10:15 for the hearing, was not present at 10:30 a.m., and had not yet appeared by the time the parties agreed would be his deadline for him to do so, i.e., by 11:00 a.m. that morning. BSL decided not to introduce any testimony in light of the lack of testimony from the Debtor, so the Court closed the hearing shortly after 11 am on October 19, 2018. Prior to the Court's closing of the hearing, the Debtor's attorney made two requests: (i) that the Court consider the memorandum of law the Debtor had filed a few days prior to the hearing, asking the Court to apply a preponderance of evidence, rather than clear and convincing, standard (doc. # 33); and (ii) granting the Debtor a few days to file a request to explain his failure to appear that day and reopen the evidentiary hearing. The Court ruled that it would consider the entire record through the closing of the evidentiary hearing prior to issuing its decision, and that it would not grant the Debtor any further opportunities to present evidence absent compelling proof of exigent circumstances for his failure to appear on October 19th.

On October 22, 2018, the Debtor filed a motion to reopen the evidentiary hearing (doc. # 35), claiming that "a moment of confusion" led to his mistaken belief that the evidentiary hearing was scheduled for 11:30 a.m. rather than 10:15 a.m. On October 29, 2018, BSL filed a response arguing that a lapse in memory is insufficient grounds to merit reopening the hearing, particularly in light of the Debtor's several failures to appear in this case (doc. # 39). Although cognizant of the Debtor's long history of repeated absences and myriad excuses, the Court was sensitive to the Debtor's medical

---

enforced the Local Rule's notice requirement and denied the Debtor's request to present testimony.

circumstances, and found his explanation – a "lapse of memory, potentially due to prior concussions" – to be consistent with the Debtor's prior representations and thus the Court deemed it appropriate to give the Debtor an opportunity to prove this was a truthful and sufficient excuse for why he failed to appear at the October 19th hearing (doc. # 40). Hence, the Court entered an order, setting a hearing on the Debtor's motion to reopen the evidentiary hearing, for November 7, 2018, at 1:15 p.m., "so the Court [could] hear the Debtor's explanation in person, and assess its credibility." That order stated if the Court found the Debtor's explanation sufficiently credible to warrant reopening the evidentiary hearing, it would hear the parties' arguments, and their witnesses' testimony at that time (doc. # 40).

On November 5, 2018, the Debtor and BSL filed a joint stipulation purporting to, inter alia, conditionally extend the automatic stay in the Debtor's case through June of 2019, require the Debtor to make adequate protection payments to BSL, and keep the bankruptcy case open until the earlier of June 13, 2019 or the date the Debtor sold the Property (doc. # 43, "the "Agreement"). The Court issued an order denying approval of the Agreement on two grounds: (i) first, the Court cannot approve an order that keeps the case open until June 2019, well beyond the typical lifespan of a no-asset chapter 7 case; and (ii) second, the Debtor and BSL cannot stipulate to extend the automatic stay to all creditors as that is a determination only the Court may make under § 362(c)(3), and one it must make based on the statutory mandates, regardless of whether any creditor objects to the relief (doc. # 44).

At 10:27 a.m. on November 7th, less than three hours before the scheduled hearing time on his motion to reopen the evidentiary hearing, the Debtor filed a motion to appear at that hearing by telephone. The Debtor requested the Court allow him to appear by telephone "in accordance with the Americans with Disabilities Act," because "he was advised by his treating physician not to drive himself from Brattleboro to Burlington, and he was unable to secure alternative transportation in time" (doc. # 45). While the Americans with Disabilities Act ("ADA") requires courts "to take reasonable measures to remove architectural and other barriers to accessibility[,]" it does not require those courts "to employ any and all means to make judicial services accessible to persons with disabilities[,] … [but rather,] only 'reasonable modifications' that would not fundamentally alter the nature of the service provided[.]" Tennessee v. Lane, 541 U.S. 509, 531–32 (2004). The Debtor knew one week in advance of this hearing date that he was required to present his explanation "in person" so the Court could "assess its credibility," (doc. # 40), but waited until just three hours before the hearing to file his request to appear by telephone, did not address how that would allow the Court to assess his credibility, did not allege any accessibility issues with the Court's Burlington location or courthouse, and employed a rationale – a

desire for ADA accommodation – that Debtor's counsel admitted to devising "[that] morning … as [he] was driving into the parking lot at work and saw a handicap sign." The Debtor has appeared (and failed to appear) at several hearings over the course of his various bankruptcy cases, in this District, since 2016, and although his attorney asserted the Debtor has been receiving Social Security Disability benefits since well before 2016, the Debtor never before raised an ADA argument. The Court found the Debtor's ADA argument wholly unavailing, due to its scant content, lack of support, tardy filing, and inconsistency with the Debtor's prior arguments and conduct in his cases before this Court.

In ruling on the Debtor's motion to appear by telephone and his motion to reopen the evidentiary hearing, the Court took into account the numerous opportunities it has already granted to the Debtor to present testimony, and his failure to either appear or adhere to proper procedural requirements on each of those occasions. Considering the Debtor's persistent failure to appear and comply with Court orders, as well as his untimely motion to appear by telephone,[4] the Court denied that motion. Consequently, the Court also denied the Debtor's motion to reopen the evidentiary hearing and reinstated its determination closing that hearing as of October 19, 2018.

The Court then took the Debtor's Motion to Extend the Automatic Stay under advisement.

## IV. <u>DISCUSSION</u>

Congress added § 362(c)(3) (the "Controlling Statute") to the Bankruptcy Code, to limit the extent of the automatic stay in repeat filer cases, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 § 302 ("BAPCA"). It reads as follows:

(c)  …
>    (3)  if a single or joint case is filed by or against a debtor who is an
>         individual in a case under chapter 7, 11, or 13, and if a single or joint
>         case of the debtor was pending within the preceding 1-year period but
>         was dismissed, other than a case refiled under a chapter other than
>         chapter 7 after dismissal under section 707(b) –
>    (A)  the stay under subsection (a) with respect to any action taken
>         with respect to a debt or property securing such debt or with
>         respect to any lease shall terminate with respect to the debtor on
>         the 30th day after the filing of the later case;
>    (B)  on the motion of a party in interest for continuation of the
>         automatic stay and upon notice and a hearing, the court may
>         extend the stay in particular cases as to any or all creditors

---

[4] If the Debtor had timely filed this motion to appear by telephone, the Court might have been able to reschedule the hearing, to give the Debtor an opportunity to secure transportation to Burlington, move the hearing to Rutland, Vermont, or provide for his appearance via video conference. However, the Debtor did not provide the Court or BSL with nearly sufficient time to change a hearing that required both BSL and the Debtor's presence.

(subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed. …

(C)  for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary) -

(i)  as to all creditors, if -

(I)  more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

(II)  a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to-

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded -

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii)  as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

11 U.S.C. § 362(c)(3) (2018) (emphases added).

This Court recently articulated the analysis it employs, based on the language of the statute, when adjudicating motions brought under the Controlling Statute. See In re Goodrich, No. 17-10500, 2018 Bankr. LEXIS 2894 (Bankr. D. Vt. Sept. 24, 2018). Applying that analysis here requires the Court to consider five potentially relevant inquiries:

8

(1)     Does § 362(c)(3)(A) apply in this case and trigger a possible termination of the automatic stay, as to all creditors, on the 30th day after the case was filed?

(2)     Did the Debtor timely move to extend the stay, and timely present evidence at a hearing, as required by § 362(c)(3)(B)?

(3)     Does a presumption arise that the Debtor filed this case not in good faith, under § 362(c)(3)(C)?

(4)     If so, has the Debtor rebutted the "not filed in good faith presumption," by clear and convincing evidence, in satisfaction of § 362(c)(3)(C)?

(5)     If the Debtor has met that burden of proof and established he filed this case in good faith, what, if any, conditions on the extension of the stay are warranted, under § 362(c)(3)(B)?

Addressing these inquiries in the context of the facts and procedural history pertinent to the Motion, including both the Debtor's 2016 Case and the Debtor's current case, the Court makes the following findings of fact and conclusions of law.

### 1.   Is this Case Subject to the § 362(c)(3) Stay Termination Provision?

The dismissal of an individual's bankruptcy case, other than dismissal under § 707(b), followed by that individual's filing of a new petition under chapter 7, 11, or 13, within a one-year period, opens the door to a termination of the automatic stay, in the later case, on the 30th day after the debtor filed that case. See § 362(c)(3)(A). That early stay termination provision is triggered whenever the earlier of the two cases was dismissed, regardless of why it was dismissed. See, e.g., In re Daniel, 404 B.R. 318, 326 (Bankr. N.D. Ill. 2009) (prior case dismissed for not making mortgage payments required by the plan); In re Charles, 334 B.R. 207, 213 (Bankr. S.D. Tex. 2005) (debtor voluntarily dismissed her prior case); In re Montoya, 333 B.R. 449, 452 (Bankr. D. Utah 2005) (prior case dismissed for plan payment default).

Since the Debtor filed this case on August 21, 2018, i.e., less than one year after the Court dismissed his prior individual bankruptcy case, on April 3, 2018, the early termination of stay provision (set out in § 362(c)(3)(A)) applies in this case. Therefore, the automatic stay in the instant case terminated, by operation of law, on September 20, 2018, unless the Court finds the Debtor satisfied the criteria of the Controlling Statute. See § 362(c)(3)(B).

### 2.   Did the Debtor Timely Move to Extend the Stay, and Act within the Timeframes Required by § 362(c)(3)(B)?

The Debtor timely filed a motion to extend the stay, and the Court conducted a hearing on the Motion within 30 days after filing the case, as required by § 362(c)(3)(B).[5]

---

[5] Although the hearing was subsequently reopened, and scheduled for a date after the 30th day the case was pending, the Debtor did not appear at that hearing (or subsequently scheduled hearings) and therefore the only actual hearing held, at which the Debtor was present, was within the statute's 30-day timeframe. Hence, although the procedural history of the case is

**3. Does the Presumption the Debtor's Current Case is "Filed Not in Good Faith" Apply?**

Whether this case was presumptively not filed in good faith under § 362(c)(3)(C) (the "Presumption") is crucial because it determines the burden the Debtor must meet to prevail on his motion to extend the automatic stay. COLLIER ON BANKRUPTCY ¶ 362.06(3)(b). If the Presumption arises, the Debtor must rebut the Presumption with "clear and convincing evidence." See § 362(c)(3)(C). If the Presumption does not arise, the Debtor "need only show that the current case was filed in good faith under the less demanding preponderance of the evidence standard." COLLIER ON BANKRUPTCY ¶ 362.06(3)(b); see also In re Pence, 469 B.R. 643, 646 (Bankr. W.D. Va. 2012); In re Thomas, 352 B.R. 751, 754 (Bankr. D.S.C. 2006).

Under the Controlling Statute, the Presumption arises as to all creditors if (I) the debtor had more than one previous case pending within the preceding one-year period; (II) the debtor's previous case was dismissed after the debtor failed to (aa) file or amend the petition or other required documents without substantial excuse, (bb) provide adequate protection as ordered by the court, or (cc) perform the terms of a confirmed plan; or (III) there has not been a substantial change in the debtor's financial or personal affairs since dismissal of the last bankruptcy case. See § 362(c)(3)(C)(i) (emphasis added). Here, the Presumption is triggered, as to all creditors, by two of the statutory criteria: (i) dismissal of the Debtor's 2016 Case after he failed to file or amend required documents without substantial excuse, and (ii) no substantial change in the Debtor's financial or personal affairs since dismissal of the 2016 Case.

*(i) Dismissal After Failing to File or Amend Required Documents Without Substantial Excuse*

The first question with respect to whether the Presumption is applicable to this Motion focuses on the criterion in subparagraph (C)(i)(II), the reason for, and timing of, dismissal of the Debtor's 2016 Case. On October 16, 2018, prior to the scheduled date of the evidentiary hearing on the Motion, the Debtor filed a memorandum of law contending the Presumption does not apply in this case (doc. # 33). BSL filed a response arguing to the contrary (doc. # 34). BSL's objection prevails.

There is no dispute the Debtor's prior case was dismissed on a date after the Debtor failed to fully amend his schedules and file a Statement of Intention, but that does not resolve the question of whether the Presumption applies. It is complicated due to the tortured history of the Debtor's 2-phase 2016 Case. The Debtor initiated the 2016 Case under chapter 13. The Court converted the case to chapter 7, over the Debtor's objection. Then, the Court dismissed the case, on the chapter 7 case

---

quite complicated and muddled, based on this record, the Court finds, for purposes of this analysis, that the Debtor satisfied the two temporal deadlines of the Controlling Statute.

trustee's motion, to which the Debtor consented. <u>See</u> case # 16-11462, doc. ## 69, 102. The Presumption's applicability to circumstances in which a debtor's prior case was involuntarily converted to chapter 7 due to a debtor's misconduct, and later dismissed, appears to be an issue of first impression. Thus, whether the Presumption applies here, under subparagraph (II) requires the Court to determine the meaning of the word "after" in one of the possible triggering mechanisms under § 362(c)(3)(C)(i). In determining statutory meaning, this Court must consider "the language itself, the specific context in which that language was used, and the broader context of the statute as a whole." <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 341 (1997).

The pertinent question turns on whether the 2016 Case was dismissed <u>after</u> the Debtor failed to "file or amend the petition or other documents without substantial excuse[.]" The Debtor maintains, first, that his prior case "was dismissed because of his inability to participate in a series of 341 meetings because of his physical condition at the time[,]" and not because of a failure to file required documents (doc. # 33). The Debtor asserts, second, without citing any case law, that the Presumption-triggering condition described in § 362(c)(3)(C)(i)(II)(aa) requires, "the previous dismissal [of a debtor's prior bankruptcy case] ***be based on*** Debtor's failure to file required documents" (doc. # 33) (emphasis added). The plain language of § 362(c)(3)(C)(i)(II)(aa), however, requires only that a debtor's previous case "was dismissed within such 1-year period, ***after*** the debtor failed to … file or amend required documents without substantial excuse" (emphasis added).

Because dictionaries in publication at the time of the BAPCPA legislative process defined "after" to mean either "because of" or simply "subsequent in time to[,]" they are of limited utility to this analysis.[6] Thus, the Court must look to "the specific context in which that language was used, and the broader context of the statute as a whole" to discern the meaning of "after" in this provision. <u>Robinson</u>, 519 U.S. at 341. Specifically, in considering a BAPCPA provision, Supreme Court guidance indicates a court should compare the language used in that provision to other BAPCPA provisions and to the Bankruptcy Code as a whole. <u>See, e.g.</u>, <u>Milavetz, Gallop & Milavetz, P.A. v. United States</u>, 559 U.S. 229, 244 (2010). In § 362(c), Congress employed a sentence structure, "dismissed after," that is not found anywhere else in the Bankruptcy Code. In contrast, the Code frequently contains the phrasing

---

[6] <u>See, e.g.</u>, THE NEW OXFORD AMERICAN DICTIONARY 28–29 (2001) (defining "after" to mean "during the period of time following (an event)"); THE AMERICAN HERITAGE DICTIONARY 30 (4th ed. 2000) (defining "after" to include both "subsequent in time to" and "subsequent to and because of"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 38 (2000) (defining "after" to mean "later than a particular time or period of time" or "subsequent to and in consequence of").

"dismissed for," "dismissed due to" or "dismissed because" when describing the basis for prior dismissals. See § 109(g)(1) ("… the case was dismissed by the court *for* willful failure of the debtor to abide by orders of the court …"); § 362(i) ("if a case … is dismissed *due to* the creation of a debt repayment plan …"); § 362(n)(1)(B) ("… debtor was a debtor in a small business case that was dismissed *for* any reason …"); § 526(c)(2)(B) ("[any debt relief agency] provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed … *because of* such agency's intentional or negligent failure to file any required document …").

This contextual analysis is crucial because "[where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Rodriguez v. United States, 480 U.S. 522, 525 (1987). In enacting the language of § 362(c)(3)(C)(i)(II), it appears Congress purposely did not mirror the language of other dismissal-related provisions in the Bankruptcy Code. See §§ 109(g)(1), 362(i), 362(n)(1)(B), 526(c)(2)(B). Particularly telling is the alternative phrasing found within § 526(c)(2)(B), another provision added at the time of the BAPCPA amendments, which similarly concerns a past case dismissed for failure to file documents. While § 362(c)(3)(C)(i)(II)(aa) triggers the Presumption when a debtor's prior case was "dismissed … *after* the debtor failed to … file or amend required documents[,]" § 526(c)(2)(B), holds a debt relief agency liable if it provided assistance to a person whose case "is dismissed … *because of* such agency's intentional or negligent failure to file any required documents" (emphases added). Another important reference point is found in § 109(g). Like the instant provision, that statute also limits relief to individual debtors based on misconduct in a prior case. However, it uses the following language: "if the case was dismissed by the court *for* willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case[.]" 11 U.S.C. § 109(g)(1). Though the Controlling Statute is, as a whole, quite maladroitly drafted, the most straightforward reading of subparagraph (C)(i)(II), based on the text's language and contextual analysis, particularly in §§ 526(c) and 109(g), the Court finds Congress intended the Presumption to apply if the debtor engaged in the described conduct at any time prior to dismissal of the referenced, prior bankruptcy case.[7]

---

[7] Though the language of subparagraph (C)(i)(II)(aa) is more expansive than analogous Code provisions, the Presumption offers some escape valves even to debtors who failed to meet the Code's requirements in earlier bankruptcy cases. First, the provision itself provides a debtor the opportunity to cure early failings by limiting the Presumption's applicability to instances in which a debtor failed to "file *or amend* the petition or other documents as required…" See § 362(c)(3)(C)(i)(II)(aa) (emphasis added). Second, the section states the Presumption will not apply if the debtor has a "substantial excuse" for the

Here, the record is clear the Court dismissed the Debtor's prior case after the Debtor failed to file complete schedules and other documents in the chapter 13 phase of the case, as required by the Bankruptcy Code, without substantial excuse. See § 363(c)(3)(C)(i)(II)(aa). Despite the numerous extensions in his prior case, the Debtor never filed a Statement of Intention following conversion of the case, nor did he amend the schedules to reflect the claims of the non-Debtor heirs to his aunt's estate. Based on the plain language of the Controlling Statute, and the contextual insights available throughout the Code, the Court concludes the Presumption arises even though the Court did not dismiss the Debtor's 2016 Case *because* of that filing deficiency.

*(ii) No Substantial Change in Debtor's Financial or Personal Affairs Since Dismissal of the 2016 Case*

Additionally, if the Debtor failed to show there was a substantial change in his financial or personal affairs since dismissal of the last bankruptcy case, that too would trigger the Presumption, under subparagraph (C)(i)(III). That subsection of the Controlling Statute, articulating the change in circumstances criterion, requires the Court to impose the Presumption if there has not been "a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13" or reason to conclude there may not be a discharge entered in the latter case, if filed under chapter 7. See §362(c)(3)(C)(i)(III).

The Debtor has failed to demonstrate the necessary change in financial or personal conditions. The schedules he filed in the current case are largely unchanged from the last set of schedules he filed in his 2016 Case. Compare doc. # 17 with case # 16-11462, doc. ## 1, 23, 27. The Debtor's assets, as listed in Schedule A/B are essentially unchanged from his prior case with the exception of an additional, non-functioning vehicle for which the Debtor claims the full $500 exemption. The Debtor again claims exemptions for nearly all assets unencumbered by security interests, eliminating the possibility of a dividend to unsecured creditors. At first glance, the Debtor's total liability of $418,156 (doc. # 17) appears lower than in the 2016 Case, in which it was $505,753 (case # 16-11462, doc. # 27), but the schedules filed in the prior case included the liabilities for both the Debtor and his ex-spouse. The Debtor's individual liabilities now include the unquantified claim of the Heirs of the Estate of Claudette Fisher, for "the accused [] misuse of funds while administrator of probate estate of Claudette Fisher"

---

failure to comply, though "mere inadvertence or negligence" is not a substantial excuse, unless caused by the negligence of the debtor's attorney. See In re De Leon, 2016 Bankr. LEXIS 4137 (Bankr. S.D. Tex. 2016) (finding the debtor failed to provide the chapter 13 trustee with copies of tax returns without substantial excuse); In re Wright, 533 B.R. 222, 233 (Bankr. S.D. Tex. 2016) (finding debtor's *pro se* status, on its own, insufficient to constitute substantial excuse); In re Acevedo, 2012 Bankr. LEXIS 2597, *18 (Bankr. D.N.M. 2012) (finding presumption inapplicable as debtor's prior case "was caused by the

(doc. # 17), a claim that should have been scheduled in the Debtor's prior case. With respect to his budget, the Debtor continues to rely primarily on the same $1,886 in monthly social security income and his listed monthly expenses have grown by 9.4%, or $221, in the form of increases for food and housekeeping supplies, clothing and laundry, and contributions to support others not residing with the Debtor (doc. # 17). The Debtor's budget, as reflected in Schedules, not only fails to demonstrate "a *substantial* change in [his] financial affairs" under subparagraph (C)(i)(III), but also raises several questions. As in 2016, the Debtor again lists his sons as dependents who reside with the Debtor, but has not changed their respective ages. Both sons were listed as 17 years old in November 2016 (case # 16-11462, doc. # 1) and are listed as the same age in 2018 (doc. # 17). If the Debtor's sons do reside with him, he has incorrectly included $10 per month in Schedule J for "cash to sons" under the category of "[o]ther payments you make to support others who do not live with you" (doc. # 17). If his sons no longer reside with him, there is no explanation why the Debtor's food and housekeeping expenses have increased $200 per month in this most recent case. Hence, the Debtor has failed to show there is reason to believe the Debtor has experienced a substantial change in his financial circumstances since he filed his last bankruptcy case.

Additionally, while the Debtor asserts his health has improved since he filed the 2016 Case, and especially since that case was dismissed, he has offered no testimony, or pertinent admissible documentary evidence, to prove a substantial change in his affairs. See In re O'Donnell, 43 B.R. 679 (Bankr. E.D. Pa. 1984) (finding debtor's counsel's unsupported assertion that the debtor was "emotionally unable to appear in public" to be insufficient to waive the debtor's appearance at the 341 meeting.) Moreover, on November 7, 2018, the Debtor filed a statement claiming he was unable to appear at the hearing in Burlington that day due to "significant medical issues" (doc. # 45), thus calling into question the veracity or reliability of his argument that his health condition had improved since the last bankruptcy case was dismissed (in support of his ability to meet his Bankruptcy Code duties).

Finally, based on the trustee's several motions to protect his right to object to the Debtor's discharge, both in the 2016 Case and in the instant case (doc. # 20), the Court cannot find there is a strong reason to believe this chapter 7 case will conclude with a discharge. See § 362(c)(3)(C)(i)(III)(aa).

Thus, after consideration of all three factors identified in prong III, the record compels the conclusion the Presumption is also triggered under § 362(c)(3)(C)(i)(III).

---

negligence of the bankruptcy petition preparer … and fraudulent representation that he was an attorney.")

*(iii) <u>The Presumption Arises that this Case is Filed Not in Good Faith</u>*

The Presumption arises based on two of the three enumerated triggers set forth in § 362(c)(3)(C). The Controlling Statute thus requires the Debtor to rebut the Presumption of bad faith filing through clear and convincing evidence. <u>See</u> § 362(c)(3)(C); <u>see also</u> <u>In re Galanis</u>, 334 B.R. 685, 691 (Bankr. D. Utah 2005); <u>In re Marcello</u>, 2008 WL 821542, * 2 (Bankr. N.D.N.Y. 2008). To meet this standard, and rebut the Presumption, the Debtor must "present highly probable evidence of his good faith." <u>In re Taylor</u>, 2007 Bankr. LEXIS 1505, * 5 (Bankr. E.D. Va. 2007); <u>see also</u> <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1983).[8]

### 4. Did the Debtor Rebut the "Not Filed in Good Faith" Presumption By Clear and Convincing Evidence?

As this Court observed in the <u>Goodrich</u> case, this prong of the inquiry has several facets: how one defines "good faith" for purposes of the Controlling Statute, how one measures good faith to determine whether the Debtor filed the case not in good faith, and how one establishes good faith by clear and convincing evidence. In <u>Goodrich</u>, this Court described the totality of circumstances analysis employed by courts determining good faith in the context of a § 362(c)(3)(B) motion:

"The Bankruptcy Code does not define 'good faith' for purposes of extending the automatic stay…[and] no perfect analytical carryover from another part of the Code exists regarding the good faith inquiry to be undertaken in section 362(c)(3)(B) cases." <u>In re Carr</u>, 344 B.R. 776, 780–81 (Bankr. N.D.W. Va. 2006); <u>see also</u> <u>In re Baldassaro</u>, 338 B.R. 178, 187 (Bankr. D.N.H. 2006). Like many other courts, this Court finds it most appropriate to apply a totality of circumstances analysis to determine whether a repeat filer filed their most recent bankruptcy case not in good faith. <u>See</u> § 362(c)(3)(B); <u>see also</u> <u>In re Gibas</u>, 543 B.R. 570, 596–97 (Bankr. E.D. Wis. 2016); <u>In re Carr</u>, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006); <u>In re Baldassaro</u>, 338 B.R. 178, 188 (Bankr. D.N.H. 2006); <u>In re Galanis</u>, 334 B.R. 685, 693 (Bankr. D. Utah 2005). A totality of the circumstances analysis seems apt, since that is the same analysis this Court has applied in ruling on objections to confirmation and on motions to dismiss the case, i.e., other prayers for relief based on a debtor's alleged lack of good faith or actual bad faith. <u>See, e.g.</u>, <u>In re Hutchins</u>, 400 B.R. 403, 412–13 (Bankr. D. Vt. 2009) (using totality of the circumstances analysis to determine whether the debtor filed his plan in good faith); <u>In re Edwards</u>, 2004 Bankr. LEXIS 2699, *25 (Bankr. D. Vt. 2004) (finding § 1325(a)(3) "expressly requires a finding of good faith and that such a finding is based on the totality of the circumstances, determined on a case-by-case basis" in the context of plan confirmation); <u>Suggitt v. French (In re French)</u>, 2003 Bankr. LEXIS 908, ** 16–17 (Bankr. D. Vt. 2003) (holding "[l]ike good faith, an assessment of bad faith is based on the totality of the circumstances" when assessing objections to confirmation and motions to dismiss a chapter 13 case). This mirrors the rationale of many bankruptcy courts,

---

[8] As described below, the Court finds that, even if the Presumption did not apply in this contested matter, the Debtor still failed to meet his burden under the lesser preponderance of the evidence standard. <u>See</u> <u>In re Kurtzahn</u>, 337 B.R. 356, 367 (Bankr. D. Minn. 2006) (finding debtor's proof "did not preponderate, let alone rise to 'clear and convincing' quality").

which borrow and adapt the multi-factor tests they employ in the good faith determination for confirmation of a chapter 13 case under § 1325(a), or in a motion to dismiss an individual's case for cause under §§ 1307(c), 1112(b)(1), or 707(a). See Laura B. Bartell, Stay Imposed – The Failed Policy of Section 362(c)(4), 89 Am. Bankr. L.J. 165, 177–81 (2015) (listing cases).

In re Goodrich, No. 17-10500, 2018 Bankr. LEXIS 2894, **15–16 (Bankr. D. Vt. Sept. 24, 2018).

In conducting the totality of circumstances analysis, this Court set out in the Goodrich case the following six factors it deemed most appropriate for determining whether Mr. Goodrich had shown he filed his current (chapter 13) case in good faith, as to the creditors to be stayed:

(i)   whether the Debtor's present case has a reasonable probability of success;
(ii)  why the Debtor's prior case was dismissed;
(iii) what motivated the Debtor to file the instant case;
(iv)  how the Debtor's current filing affected creditors, and the nature and extent of prejudice to any creditor(s) the Debtor seeks to stay;
(v)   whether the trustee or any creditor has objected to continuation of the stay; and
(vi)  whether the Debtor has failed to comply with the obligations imposed by the Bankruptcy Code or is attempting to manipulate the bankruptcy system.

Id. at **18–19. The factors articulated in Goodrich, and those cited in the vast majority of cases decided under the Controlling Statute, were largely "designed to address the particular concern in cases involving debtors who invoke chapter 13 on multiple occasions to prevent foreclosures of their homes." In re DiGiovanni, 415 B.R. 120, 129 n. 13 (Bankr. E.D. Pa. 2009). The test to be applied here must be tailored to recognize that, in contrast to Goodrich and most cases considering a § 362(c)(3)(B) motion, this is a liquidation rather than reorganization case. "Debtors in chapter 7 cases do not frequently request an extension of the stay[,]" In re Twiggs, 2007 Bankr. LEXIS 2378, * 4 (Bankr. D.S.C. 2007), and there are few written decisions on motions to extend the automatic stay under the Controlling Statute in a chapter 7 case. See In re DiGiovanni, 415 B.R. 120 (Bankr. E.D. Pa. 2009); In re Young, 2007 Bankr. LEXIS 229 (Bankr. S.D. Tex. 2007); In re Ross, 2006 Bankr. LEXIS 1565 (Bankr. E.D. Va. 2006).

The differences between a chapter 7 and chapter 13 bankruptcy petition, with respect to the debtor's motivations, impact on creditors, and defining a successful conclusion, have led courts assessing a § 362(c)(3) motion in a chapter 7 case to either adapt the factors typically employed in a chapter 13 context or utilize alternative factors. See In re DiGiovanni, 415 B.R. at 129 (declining to use the same multi-factor test the court employed in a chapter 13 case and instead adopting a "more concise formulation" of four factors weighing whether the debtor is eligible, pursuing the protection of the stay honestly, and filing the case "to obtain legitimate bankruptcy law protection"); In re Twiggs, 2007

16

Bankr. 2378 at ** 5–6 n. 1 (employing the same four-factor test adopted by the district for use in chapter 13 motions to extend the stay, but acknowledging that "[t]hese factors deal primarily with an analysis of good faith in a bankruptcy reorganization context rather than a liquidation and discharge scenario"); In re Young, 2007 Bankr. LEXIS 229 at **10–14 (considering seven total factors in determining a debtor's good faith, including factors infrequently cited in a chapter 13 context, such as the nature of the collateral, whether the debtor made eve of bankruptcy purchases, and "other circumstances that weigh on the wisdom of the extension").

This is a chapter 7 case, and the Debtor's prior case, though filed as a chapter 13 case, was pending under chapter 7 at the time the Court dismissed it. Therefore, some of the most salient factors in the Goodrich chapter 13 case carry less weight here, particularly "factors relat[ing] to the potential for a rehabilitation or reorganization of the debtor's financial affairs." In re DiGiovanni, 415 B.R. 120, 129 n. 13 (Bankr. E.D. Pa. 2009) (finding that numerous good faith factors developed for § 362(c)(3)(B) motions "do not come into play in a chapter 7 case, particularly a no-asset case[.]") The Court will address each of the factors it considered in Goodrich, but will adjust them, where appropriate, to reflect the contrasting circumstances a chapter 7 case presents. Moreover, the Court finds it appropriate to utilize two additional factors it did not consider in Goodrich, but which seem pertinent here: the nature of the debts in the case, and the change in circumstances between the Court's dismissal of the Debtor's 2016 case and the Debtor's filing of the current case. Since this is only the third case the Court has decided under the Controlling Statute, the Court sets forth below the factors it considers, the relevance of each to a § 362(c)(3)(B) determination in a chapter 7 case, and its findings for each.

*(i) Does the Debtor's Current Case Have a Reasonable Probability of Success?*

The first factor from Goodrich, considering whether the Debtor's present case has a reasonable probability of success, is not pertinent because this is a no-asset chapter 7 case.

*(ii) Why Was the Debtor's Prior Case Dismissed?*

The record is clear that the 2016 Case was converted to chapter 7 due to the Debtor's failure to file complete and accurate schedules, and that the Court ultimately dismissed that case, post-conversion, based on the Debtor's failure to appear at a meeting of creditors (case # 16-11462, doc. ## 40, 69, 107).

This case requires the Court to weigh the impact of the Debtor's physical limitations on his ability to meet his legal obligations against the impact they have on the rights of other parties in the case. The Court is sympathetic to the Debtor's medical situation, takes at face value his description of his serious health ailments and longstanding symptoms, and recognizes how significantly these conditions

17

may affect his day-to-day life. However, the Debtor has chosen to seek bankruptcy relief and it is only available if the Debtor fulfills certain legally imposed duties. The Court cannot excuse the Debtor from his obligations under the Bankruptcy Code, or ignore the effect the Debtor's delays and dereliction in meeting those obligations have on other parties in interest, based solely on his poor health. "Congress did not intend to deny the honest, but sickly debtor the privileges granted under the Bankruptcy Code to start one's economic life anew[,]" but any determination regarding an impaired debtor's obligations under the Code must be "based on the equities and facts presented to the Court" and should not be viewed "as a 'carte blanche' excuse for debtors to commence to fail to show for their First Meeting of Creditors[.]") In re Stewart, 14 B.R. 959, 961 (Bankr. S.D. Ohio 1981). In his 2016 Case, the Debtor failed to comply with the requirements to (i) accurately list all debts and assets (including the $80,000 interest in a relative's estate); (ii) disclose all pre-petition suits in which he was party (including as executor of his aunt's estate); and (iii) appear at numerous hearings and meetings of creditors. While the Debtor asserts in his Motion that the health problems he experienced during the pendency of the 2016 Case impaired with his ability to meet his Bankruptcy Code obligations, this list of defalcations portrays precisely the type of conduct this repeat filer statute was enacted to address. See, e.g., In re Gibas, 543 B.R. 570, 583 (Bankr. E.D. Wis. 2016) (denying stay extension where debtor failed to file documents, disclose required information, attend a meeting of creditors, and make plan payments in prior cases).

Under the Controlling Statute, a debtor who fails to satisfy the prerequisites for bankruptcy relief in one case is not entitled to the benefit of the automatic stay throughout a case filed within one year of dismissal, unless he or she can show the later case was filed in good faith, and can do so within 30 days. See In re Reswick, 46 B.R. 362, 373 (9th Cir. B.A.P. 2011); see also H.R. Rep. No. 105-540 (1998); S. Rep. No. 105-253 (1998); H.R. Rep. No. 109-31 (2005). Here, the Debtor has failed to persuade the Court his prior case was dismissed for any reason other than his failure to meet his obligations under the Bankruptcy Code.

Therefore, the second factor weighs against the Debtor.

### (iii) *What Motivated the Debtor to File the Current Bankruptcy Case?*

The third factor requires the Court to consider what motivated the Debtor to file the instant case and determine whether the Debtor's motivation supports a finding that he filed this case in good faith. The Debtor's Motion plainly states he filed this case to stop the BSL foreclosure (doc. # 8, p. 2), in the hope he could persuade this Court to allow him to sell the Property in an arms-length market sale. Nothing in the Debtor's Motion, or his affidavit in support of the Motion (doc. ## 8, 8-3), indicates the

18

Debtor had any other motivation for filing this case.

As this is a chapter 7 case, and not a reorganization case, the Debtor's Motion to extend the stay, if granted, "will not achieve any long-term goal – it only delays" the termination of the automatic stay upon discharge or dismissal. In re Young, 2007 Bankr. LEXIS 229, ** 12–13 (Bankr. S.D. Tex. 2007). The Debtor's Statement of Intention indicates he intends to "Surrender the property" (doc. # 17). The Debtor may be correct that other creditors would have fared better if he sold the Property, rather than allowing the BSL foreclosure sale to proceed, as of the date of the petition in this case. However, the potential payout to other creditors has diminished substantially, since that date, as a result of the Debtor's Motion, litigation, and multiple hearings, which have caused BSL to incur additional attorney's fees and costs, which have priority over other secured creditors. Undercutting the Debtor's position further is the fact that no other secured creditor has come forward to support the Motion or counter the allegations in the BSL Opposition. The Debtor has also failed to produce a purchase contract, identify any prospective purchasers, or file admissible evidence of any kind to support his contention that he could sell the Property for an amount that would satisfy all liens against the Property. It is also significant that, by filing a chapter 7 case, the Debtor is demonstrating he is not motivated by the desire to pay creditors through a plan or generate a dividend for his unsecured creditors, who, according to the Debtor's schedules, hold claims totaling $104,719 (doc. # 17, p. 31).

For these reasons, this factor also weighs against the Debtor.

### *(iv) How Did the Debtor's Current Filing Affect Creditors and What is the Nature and Extent of Prejudice to any Creditor(s) the Debtor Seeks to Stay?*

The fourth factor directs the Court's attention to the effect the Debtor's current case has on his creditors, and the nature and extent of prejudice to any creditor(s) the Debtor seeks to stay. The Debtor argues the secured creditors who hold liens subordinate to BSL's mortgage would recover a larger portion of their debts if he were permitted to proceed in chapter 7, with the benefit of the automatic stay. However, the Property has no equity beyond the amount of liens against it – and may even be worth less than the total of liens against it – and thus, even if the stay were extended, BSL would likely be able to demonstrate cause for relief from stay under § 362(d).[9]

---

[9] In the Motion, the Debtor asserts the Property has a value of between $350,000 and $400,000, the BSL debt is less than $200,000, and therefore there is equity in the property for other creditors (doc. # 8, p. 2). BSL counters that the balance due on its debt is $233,500 plus attorneys' fees and costs, and there are also liens of (i) approximately $130,400 due to the former trustee, (ii) $30,000 to the Vermont Department of Taxes, and (iii) $1,730 to Capital One, such that the amount due to satisfy all of the liens against the Property, even without BSL's attorneys' fees and costs, totals close to $396,000 (doc. # 19, p. 2). Therefore, even if the Property has a value of $400,000, which BSL disputes, once the accruing interest on all liens, BSL's

The Debtor's filing of this case stayed BSL's foreclosure action, and while that fact alone does not warrant a finding of bad faith, see In re Ford, 522 B.R. 829, 836 (Bankr. D.S.C. 2014), In re Baldassaro, 338 B.R. 178, 189 (Bankr. D.N.H. 2006), it demonstrates the filing prejudiced BSL's rights. Here, there is no offsetting benefit to BSL in the form of a refinance or sale that would result in a prompt payment, or a curing of all arrears within a reasonable period of time accompanied by ongoing current payments, as there would be if this were a chapter 13 case.

Thus, this factor weighs against the Debtor.

### (v) Has the Trustee or Any Creditor Objected to Continuation of the Automatic Stay?

The fifth factor, focused on whether the trustee or any creditor has objected to continuation of the stay is, again, less probative in a chapter 7 case – particularly in a no-asset chapter 7 case. There would be no dividend to creditors in this case regardless of whether the automatic stay is extended, and since the stay terminates by operation of law within a short period of time in a chapter 7 case, pursuant to § 362(c)(2), there is little reason for any creditor to spend the time and money to object to the Debtor's Motion.

However, one creditor, BSL, has filed a detailed objection, responding directly to the grounds for relief the Debtor recites in his Motion (doc. ## 15, 19, 20). Notwithstanding the proposed settlement the parties filed on November 5, 2018 (doc. # 43), BSL stated at the November 7th hearing that it was not withdrawing its objection to the Motion. The Debtor's arguments at the September 14th hearing, aimed at curtailing BSL from addressing the amount due on all liens against the Property, were unavailing since the question of overall equity in the Property is the Debtor's primary argument in the Motion.

In light of the strength of BSL's Opposition, and the Debtor's failure to prove any facts to defeat that Opposition, the Court finds this factor weighs against the Debtor.

### (vi) Has the Debtor Failed to Comply with the Obligations Imposed by the Bankruptcy Code or Attempted to Manipulate the Bankruptcy System?

The final Goodrich factor, whether the Debtor has failed to comply with the obligations imposed by the Bankruptcy Code or is attempting to manipulate the bankruptcy system, is the factor that weighs most heavily in this case. This is so because it is applicable to cases filed under all chapters of the Bankruptcy Code and is not dependent on the reorganization aspect of a case. "'Bankruptcy is a privilege and not a right' and in seeking protection under the Bankruptcy Code, a debtor 'has the responsibility to

---

attorneys' fees and costs, and the costs of sale are included, BSL argues the Property has insufficient value to satisfy all liens and certainly no equity available for a homestead exemption or dividend to unsecured creditors (doc. # 19, p. 2).

inform [himself] of [his] duties.'" <u>Wenegieme v. Macco</u>, 580 B.R. 17, 21 (E.D.N.Y. 2018) (internal citations omitted). In his prior case, the Debtor failed to comply with all of the most fundamental obligations the Bankruptcy Code establishes as prerequisites for relief: filing complete and honest schedules, appearing at properly noticed meetings of creditors, and cooperating with the trustee in administration of the bankruptcy estate.

The Debtor failed to appear at meetings of creditors four times in the chapter 13 phase of the case and six times in the chapter 7 phase. The Debtor did not initially list the amount of a judgment the trustee obtained in the chapter 7 case of the Debtor's former company Turner & Cook (# 10-11344), for the Debtor's actions in improperly receiving corporate equipment and funds. The Debtor also failed to list that claim as secured when he filed the 2016 Case (doc. # 1). The Debtor corrected those omissions only after the former trustee entered a proof of claim (doc. # 29; cl # 4-1). More disturbing, the Debtor failed to disclose his role as executor of his aunt's estate and failed to account for $80,000 in missing estate funds in the 2016 Case. The Debtor's conduct in the 2016 Case resembles the conduct of the debtor in <u>In re Gibas</u>, 543 B.R. 570 (Bankr. E.D. Wis. 2016). As the court found there, this Court finds the Debtor "has displayed a cavalier attitude toward the bankruptcy process, making little to no effort to ensure the completeness and accuracy of his bankruptcy filings." <u>Id.</u> at 598.[10] Given this history, and the Debtor's conduct in the 2016 Case, the Court must conclude this factor weighs against the Debtor.

### *(vii)* <u>*What are the Nature of the Debts in this Case and How Did They Arise?*</u>

The first additional factor, which the Court did not regard as pertinent in <u>Goodrich</u>, but does find germane in this case, is how the debts listed in the current case arose. <u>See</u> <u>In re Young</u>, 2007 Bankr. LEXIS 229, *11 (Bankr. S.D. Tex. 2007); <u>In re Carr</u>, 344 B.R. 776, 781 (Bankr. N.D.W. Va. 2006). In particular, this factor asks whether a debtor "concealed or misrepresented assets and/or sources of income, engaged in lavish lifestyle, or … attempt[ed] to avoid a single debt based upon conduct akin to fraud, misconduct, or gross negligence." <u>In re Carr</u>, 344 B.R. at 781.

As this Court held in <u>Goodrich</u>, the inquiry into whether the Debtor has established he filed his current case in good faith encompasses both the instant and immediately preceding bankruptcy cases. Here, the Debtor's obstinance and adversarial posture with regard to his Bankruptcy Code obligations, in each of the prior bankruptcy cases to which he was connected, gave rise to many of the debts the Debtor

---

[10] In his objection to the chapter 13 trustee's motion to convert (case # 16-11462, doc. # 56), the Debtor cited his attorney's advice as the cause of his lack of forthrightness. Even if these claims had been substantiated, the Debtor "cannot escape [his] duty to fully and accurately prepare [his] bankruptcy petition and schedules by pointing fingers at [his attorney]." <u>In re Gibas</u>, 543 B.R. 570, 583 (Bankr. E.D. Wis. 2016).

seeks to discharge in this case. The Debtor was one of several named defendants in an adversary proceeding, commenced December 5, 2011 (AP # 11-1033), in which the chapter 7 trustee in the involuntary bankruptcy case of the Debtor's former company, Turner & Cook (# 10-11344), accused the Debtor of "stripp[ing] out whatever value remained" in the company, and improperly transferring Turner & Cook's liquid capital and equipment to himself (AP # 11-1033, doc. # 99). It took more than three years to resolve that adversary proceeding, largely because of numerous extensions of time the Debtor needed. During the pendency of that proceeding, the trustee filed multiple documents attesting to the Debtor's failure to comply with court orders and failure to respond to appropriate discovery requests (AP # 11-1033, doc. ## 90, 96, 110). In particular, the trustee accused the Debtor of using a "lack of representation, his illness and other reasons" to excuse his "virtually total non-compliance with the minimal tasks required of him[,]" and effectively "tak[ing] advantage of the Trustee and th[e] Court" (AP # 11-1033, doc. # 110). In June of 2014, the trustee filed an emergency motion to compel the Debtor to comply with the Court's order granting partial summary judgment in favor of the trustee (AP # 11-1033, doc. # 178). The Court found the Debtor to be in contempt of that judgment, as well as subsequent Court orders, and required immediate compliance (AP # 11-1033, doc. # 195). The Turner & Cook adversary proceeding was eventually concluded through a negotiated settlement, whereby the Debtor turned over certain personal property and dropped his pending appeal of the Court's summary judgment order, in exchange for the right to retain a truck from the Turner & Cook bankruptcy estate (case # 10-11344, doc. ## 75, 76).

In light of how these debts arose, this factor weighs against the Debtor.

### (viii) *Was there a Substantial Change in the Debtor's Circumstances Between the Dismissal of his 2016 Case and the Filing of his Current Case?*

The second additional factor the Court finds relevant here, based on the Debtor's Motion and argument at the hearing, is the purported change in the Debtor's circumstances between the dismissal of his 2016 Case and the filing of his current case. The Debtor emphasizes in the Motion that (a) his failure to comply with so many of the Bankruptcy Code duties in his prior case was due to his medical infirmities, and to his concussions in particular; and (b) he is now in better health and thus ready and able to meet all of his Bankruptcy Code obligations in this case (doc. # 8, p. 2).

Though subparagraph (C)(i)(III) of the Controlling Statute refers to the absence of a substantial change in circumstances as one of the criteria for triggering applicability of the Presumption, it can also be a useful factor in the context of whether to grant a motion to extend the automatic stay. See, e.g., In re

Thornes, 386 B.R. 903, 909 (Bankr. S.D. Ga. 2007) (finding the provision describing the absence of a change of circumstances "does not simply state the various circumstances that trigger a presumption of bad faith ... it also indicates how those presumptions may be rebutted") (quoting In re Whitaker, 341 B.R. 336, 341 Bankr. S.D. Ga. 2006)); In re Ross, 2006 Bankr. LEXIS 1565, **4–7 (Bankr. E.D. Va. 2006) (finding chapter 7 debtors' testimony of their "changed circumstances since their last filing" insufficient to rebut the Presumption, which was triggered by the court's finding that "the debtors' financial circumstances have not changed significantly since the dismissal with prejudice of their previous chapter 13 case"); In re Collins, 335 B.R. 646, 651–53 (Bankr. S.D. Tex. 2005) (finding Presumption applicable because the debtor's "financial affairs appear relatively unchanged" since the previous case, which then also deterred the debtor from rebutting the Presumption "with any evidence that goes to his financial or personal affairs since the filing of his last case.")

As set out above, see supra Part IV(3)(ii), the Debtor has not demonstrated a substantial change in his financial or personal affairs since dismissal of his prior case, particularly in light of the absence of testimony or documentary evidence to support any such change, as well as his recent filing claiming an inability to attend a scheduled hearing in Burlington due to "serious medical issues" (doc. # 45).

Therefore, this factor likewise weighs against the Debtor.

*Considering the Totality of the Debtor's Evidence, Has the Debtor has Met His Burden of Proof?*

Having found all seven of the factors pertinent to the circumstances of this case weigh against the Debtor, the Court determines the Debtor has failed to show, by clear and convincing evidence, that he filed this case in good faith as to the creditors to be stayed.

In light of the consistent, clear, and substantial findings supporting that conclusion, the Court finds this result would be the same, even if the Court applied a preponderance of the evidence standard. See In re Kurtzahn, 337 B.R. 356, 367 (Bankr. D. Minn. 2006).

### 5.  Are Conditions on the Extension of the Automatic Stay Warranted?

Since the Court has determined an extension of the automatic stay is not warranted under § 362(c)(3), it need not address whether any conditions should be imposed on an extension of the stay.

## V. CONCLUSION

The Controlling Statute requires this Court to determine if the Debtor, who had another case pending during the one-year period before he filed the instant case, filed the current case in good faith.

For the reasons set out above, the Court finds (i) the early termination provision applicable to repeat filers, under the Controlling Statute applies in this case; (ii) the Debtor has met the procedural

requirement for seeking an extension of the automatic stay; (iii) the rebuttable Presumption that the Debtor filed this case not in good faith, arose in this case; (iv) in order to obtain an extended stay, the Debtor was required to rebut this Presumption by clear and convincing evidence; (v) under the totality of the circumstances, and the Debtor's most recent prior bankruptcy case (case # 16-11462), the Debtor has failed to demonstrate he filed the current case in good faith as to the creditors to be stayed, with clear and convincing evidence; and (vi) even if the Court applies a preponderance of the evidence burden, as the Debtor urges, the Debtor has still failed to demonstrate he filed the current case in good faith as to the creditors to be stayed. Therefore, the Court concludes Mr. Fisher did not file this case in good faith as to the creditors to be stayed and is not entitled to an extension of the automatic stay, beyond the first 30 days the case was pending.

Accordingly, the Court sustains BSL's Objection to the Motion and denies the Debtor's Motion to Extend Stay, under 11 U.S.C. § 362(c)(3)(B). Thus, there is currently no stay in this case.

This constitutes the Court's findings of fact and conclusions of law.

_Colleen A. Brown_____

November 20, 2018                                                   Colleen A. Brown
Burlington, Vermont                                                United States Bankruptcy Judge